**TEXAS ELECTRIC SERVICE COMPANY,**
Appellant,

v.

**Earl VEST, Appellee.**

No. 5248.

Court of Civil Appeals of Texas.

El Paso.

Feb. 12, 1958.

Rehearing Denied March 5, 1958.

John R. Lee, Kermit, Cantey, Hanger, Johnson, Scarborough & Gooch, Jack C. Wessler, Fort Worth, for appellant.

George Finley, Kermit, McKool & Bader, Dallas, for appellee.

FRASER, Justice.

This is a condemnation suit whereby appellant condemned a 50-foot strip across eight sections of land out of 37 sections of land owned by the appellee. The jury found that the value of the land taken was the sum of $17,064, and that the remainder of appellee's land was damaged $1 per acre. The court entered judgment for $23,004 damage to the remainder of appellee's land, making a total judgment of $40,068. Appellant has appealed from this judgment.

■ Appellant's first three points deal with the jury's answer to Issue No. 2, which answer found that the strip of land condemned had no market value after the condemnation. We think these points are well taken, because the condemner did not take the entire fee, but only an easement, such easement not carrying with it the right to exclusive possession. Such a taking has been held to be a taking of less than the entire fee and, therefore, the entire value has not been destroyed. This is settled law in Texas and needs no further discussion. The jury's answer is, therefore, erroneous. Texas Electric Service Co. v. Perkins, Tex. Com.App., 23 S.W.2d 320; Texas Power & Light Co. v. Hering, Tex.Civ.App., 178 S.W.2d 162; Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151.

■ It has been suggested that this error could be cured by remittitur, and we have, accordingly, given it very serious consideration and have tried diligently to do so. However, we are forced to the conclusion that the record, in its present state, is not sufficiently informative as to enable us either to require a proper remittitur or to justify, from the evidence, any remittitur we might require or suggest.

Appellee owned the surface, only. There was evidence that the property involved was traversed by some lease roads and contained some oil field installations, as well as two other easements.

■ The testimony as to the value of the strip taken ranges from $666.46 to a figure much higher than the jury's award of $17,-064. We feel that, under the state of the record, it would be an arbitrary action for us to reach out and pick a figure somewhere between a few hundred dollars and a great many thousand dollars. There would not be any justifiable basis to defend or support any figure we might choose, as none of the witnesses agree. The "before taking" value, as found by the jury, was a figure not testified to by any witness. The "after taking" value testimony ranges from "nothing" up to fifty per cent. Any remittitur should be one that consistently represents sound reasoning based on factual testimony that can be readily ascertained. There is not enough in the record to justify such action on our part, or even to explain why we arrived at the figure at which we might arrive.

We have, therefore, concluded that we do not have enough evidence herein to justify our attempting to correct the jury's error by requiring a remittitur, and appellant's first three points must, therefore, be sustained.

■ As a further example of the variation in testimony, the witness Boles, who was a defense witness, attempted to testify that, outside of some damage to a parallel strip of land on either side of the easement, there would be no damage whatever to the rest of the ranch. It was uncontradicted that the right of ingress and egress would be some sort of burden on the property. But the testimony ranges from a figure of no damage at all to the rest of the 36 sections, as testified to by the witness Boles, other than the easement and parallel strip, to the witnesses placing the damage at some $20 an acre, which would amount to almost a half million dollars for running this

power line across some eight sections of the ranch. Then, too, the witnesses did not sufficiently explain or detail how and why the rest of the ranch would be damaged to this extent. While a witness may testify as to the value of the land by merely stating that he knows the land and its market value, when he testifies as to damage to the land and consequent depreciation in value, such testimony must be based on reasonable information. Hence, there is no explanation, other than the mere statement that the ingress and egress privilege would be a burden. Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151.

It is also apparent that there was error in not permitting Mr. Boles, the witness of the defendant, to testify (as the Bill showed he would have done) that there was no damage to the ranch exclusive of a strip on either side of the condemned easement. It is true that this witness testified that he had not examined the ranch, other than the eight sections through which the easement passes, and it is very likely that the jury, therefore, would have paid little attention to his testimony; but we are not permitted to speculate on the jury's possible reaction and, while the careful trial judge was doubtless influenced by the fact that the witness knew nothing about the rest of the ranch, it still appears that the jury should have been permitted to hear what he had to say, as the jury is the judge as to the credibility of the witness and the weight to be given his testimony. This point is, therefore, necessarily sustained.

There are many other points raised and briefed, but we believe that those matters will not, necessarily, recur on a retrial of this matter.

Because of the errors above referred to, the judgment of the trial court is reversed, and the cause is remanded for a new trial.