NATURAL GAS PIPELINE COMPANY OF AMERICA, Appellant,

v.

Ben H. TOWLER, Jr., et ux., Appellees.

No. 115.

Court of Civil Appeals of Texas.

Corpus Christi.

Nov. 4, 1965.

Robert M. Davant, Jr., Houston, for appellant.

Lawrence P. Gwin, of Bell, Gwin & Furse, Bay City, for appellees.

SHARPE, Justice.

This appeal is from a judgment in a condemnation case in which Natural Gas Pipeline Company of America, appellant, condemned a right-of-way easement across a tract in Matagorda County, containing 42.64 acres, belonging to Ben H. Towler, Jr., and wife, appellees, for the purpose of constructing, operating and maintaining a gas pipeline.

Judgment was rendered in favor of appellees for $3,350.00, based upon a jury verdict of four special issues which were answered in substance as follows: (1) the market value of the strip taken for the right-of-way easement (50 by 1500 feet), consisting of 1.74 acres, immediately before the taking on November 24, 1963, was $700.00, (2) the market value of said strip immediately after the taking of said easement was $350.00, (3) the market value of the remaining 40.9 acres of appellees' tract immediately before the taking of such ease-ment was $20,500.00, and (4) the market value of appellees' remainder immediately after the taking of the easement was $17,-500.00. The effect of the verdict was to allow $350.00 for the easement taken across 1.74 acres and $3,000.00 as damages to the remaining 40.9 acres of appellees' tract.

Appellant urges four points of error in substance as follows: As to special issues 3 and 4, concerning damages to the remainder, (1) there is no evidence and (2) the evidence is factually insufficient to raise and support the same, (3) failure to disregard such issues and the answers thereto, and (4) refusal to allow appellant's value witness to testify as to comparable sales.

The tract here involved is rectangular in shape, fronts approximately 1875 feet on State Highway 35 and is approximately 1400 feet deep. The pipeline easement taken by appellant runs diagonally across the tract for a distance of 1500 feet, entering it at about 350 feet from the southwest corner and leaving at about 900 feet from the northwest corner. About one-third of the tract is west of the pipeline easement and about two-thirds to the east thereof. There is an existing gas pipeline easement to the west of the one in question at varying distances from about 300 to 400 feet. Also, there is an existing crude oil pipeline easement running along the front of the tract next to said State Highway 35. All of such facts are shown by a large plat offered in evidence by the condemnor.

Only two expert witnesses testified concerning values of the remainder before and after the taking of the easement in question. Mr. M. L. Hale, appellant's value witness, testified that there was no difference in such value. Mr. Burt O'Connell, appellees' value witness, testified that the value of the remainder was $20,500.00 before and $17,500.00 after the taking.

Appellant's basic contention under its points one, two and three is that the only testimony which can be looked to in sup-

port of the issues and judgment rendered for damages to the remainder is the testimony of Mr. O'Connell. Appellant says that such testimony amounts to no more than a naked, unsupported opinion or conclusion and is insufficient legally and factually to raise and support the issues of damage as to the remainder. We do not agree with such contentions and hold that the judgment should be affirmed.

Mr. O'Connell testified in substance as follows: He is engaged in the real estate business, has an office in Bay City, Texas; that he has been a licensed real estate broker since 1953; that he engaged in such business part-time after 1953 and recently has been devoting full time to it; that he has lived all of his life in the vicinity of Van Vleck and Bay City and knows well the land in such area and that of Sugar Valley, in or near which the tract here involved is situated. He further testified that the elevation of the land in such area varies and the higher areas make desirable home sites; that the land in question is close to Caney creek, is on a higher elevation and rich in quality. He said that he had gone out to the land, had inspected it and knew it well enough to have an opinion as to its market value. He testified that the value of the strip (50 by 1500 feet) for the easement was $740.00 before and $340.-00 after the taking, or a difference in value of $400.00. The jury awarded $350.-00 for such easement. Mr. O'Connell also testified that the remainder of appellees' tract had a value of $20,500.00 before and $17,500.00 after the taking. The jury findings resulted in an award of $3,000.00 for such remainder. Mr. O'Connell said, in substance, that the highest and best use for the land would be for home sites for which there was a great demand. During his testimony, Mr O'Connell referred to the plat which had been offered in evidence by appellant. O'Connell was not cross-examined by counsel for appellant.

Prior to the testimony of Mr. O'Connell, the condemnor offered the testimony of the witnesses Ellis Pierson, W. B. Bounds, John McCain and M. L. Hale. Pierson was employed by appellant in its land right-of-way departments. He testified that he was familiar with the land in question and the easement acquired; that he had been unable to agree with Mr. Towler as to the price to be paid him; that the line had been installed and was a gathering line used to transmit gas to the main line south of Highway 35. Bounds was district pipeline superintendent for appellant. He testified that the gas line across appellees' property was an eight inch line; that the pressure on it was between 600 and 700 pounds per square inch, and as to details of the pipe and tests made on it; that the back fill over where the pipe was installed would sink and require some time to settle; that the condemnor under the easement could go on the land for the purposes of construction, repairing and restoring the line; that such a line can have leaks, most of which occur around a weld; that the lines are frequently inspected in order to discover leaks as soon as possible; that aerial inspection will disclose a brown area over a leak, which usually is discoloration of grass; that some suspected leaks turn out to be vines; there is a difference between a leak and a break; that a break would be apt to develop a fire more than a leak; that the leaks his company had, that he knew about, were not serious; that the pipe installed on the instant tract came from Illinois and was reconditioned; that the pipe used was a good grade of pipe; that it works within a safety factor of approximately one-third of the bursting factor; that he saw the instant pipe tested at 975 pounds, but didn't see it tested at a higher figure; that his company did not have breaks; that welds are the most vulnerable part; and that leaks are easily repaired. He had heard of a recent case where there was a break in a gas line and a pretty destructive fire. John McCain was pipe line maintenance foreman for appellant. He testified that he was chief inspector on the Sugar Valley job; that appellees' land was levelled but the grass had

not completely grown back after installation of the pipe; that he crossed Texaco six and eight inch lines running parallel to the road (apparently highway 35); that a Houston Pipeline Company 12-inch line parallels appellant's line. He identified a large plat showing such lines and testified as to measurements made by him on the ground. He further said that a patrol plane flies over the line every two weeks and if anything wrong is observed a report is made and checked out; that they also ride by and check it about once a month; that Mr. Towler's house is nearby on another tract. He also testified as to details of installation of the line.

M. L. Hale was the condemnor's expert value witness. He testified that he had lived in Bay City for about 42 years; that he had been a real estate broker for about 13 years; that he had been engaged in buying and selling of real estate for himself and others during such period of time; that he was generally familiar with land values in the area of Matagorda and surrounding counties; that he was familiar with the property involved in this suit; that he was employed by condemnor to make an appraisal of the property; that he went out to the property and checked it; that it was better than average soil, good rich land and has pecan trees; that the area was generally known as the Sugar Valley area; that the highest and best use for the land in his opinion was for farming and grazing; that there were two crude lines running along the front of the property and a pipe line running along the west of the tract; that the surface of the land, in his opinion, was worth $250.00 per acre; that the strip taken for the easement was worth $435.00 prior to its taking; that after the taking it was worth $217.50, or 50% of its former value; that the value of the remainder before and after the taking of the strip was $250.00 per acre; that the remainder had not been devalued or damaged, in his opinion; that when he looked at the land he had a map (apparently furnished by condemnor); that he located the lines and took some

pictures; that the property was a nice clean tract of land with about 1875 feet highway frontage; that some of the land was adaptable for use as home sites.

The witnesses Bounds, McCain, Hale and O'Connell all referred to the large plat offered in evidence by the condemnor which fully showed the lay-out of the tract, the location of pipe lines, roads and distances involved.

■ O'Connell, appellees' value witness, was properly qualified as an expert as to real estate values. He was a licensed real estate broker with years of experience in that business and had a knowledge of the general value-standard and of market values of real estate in the vicinity involved. He had made personal observation and examination of the land in question so as to have knowledge of the particular thing to be valued. He testified that he knew the value of the land in question. Under such basic showing he was entitled to express his opinion as to the value of the tract in question. The same was admissible and had probative force. His opinion as to value and damage to the remainder of appellees' tract was not naked and bare. See Texas Practice, Vol. 2, McCormick & Ray, Evidence, § 1422, pp. 256–262; State v. Scarborough, 383 S.W.2d 839 (Tex.Civ.App., 1965, wr. ref. n. r. e.); Tennessee Gas Transmission Co. v. Dishman, 303 S.W.2d 471 (Tex.Civ.App.1957, wr. ref. n. r. e.); Hubbard v. Harris County Flood Control District, 286 S.W.2d 285 (Tex.Civ.App. 1956, wr. ref. n. r. e.).

The condemnor could have attempted on voir dire examination to show O'Connell's lack of qualifications to express an opinion, but this was not done. Also, condemnor could have attempted on cross-examination to show lack of qualification, knowledge or basis for the expression of opinion by him; but this was not done. Conceivably, his testimony might have been weakened to the extent that a motion to strike could have been urged. But speculation on this score

is not helpful, because the condemnor elected not to cross-examine. Further details of the "how and why" of O'Connell's opinion might have been developed either on direct or cross-examination, but such possibility does not make his testimony inadmissible or factually insufficient. The credibility of O'Connell and the weight to be given his testimony was for the jury.

We agree with appellant's position that "as a practical matter, the extent of damage to either side of an easement must at some point distant from such easement terminate." However, on the record presented here, we cannot hold that appellant has brought this case within that rule. We are here dealing with a comparatively small tract and short distances. Appellant places reliance upon the cases of Tennessee Gas Transmission Company v. Zirjacks, 244 S. W.2d 837 (Tex.Civ.App.1951, n. w. h.); Texas Electric Service Company v. Vest, 310 S.W.2d 733 (Tex.Civ.App., 1958, wr. ref. n. r. e.); City of Cedar Hill v. Wheeler, 326 S.W.2d 236 (Tex.Civ.App., 1959, wr. ref. n. r. e.); and Texas Electric Service Company v. Campbell, 161 Tex. 77, 336 S.W.2d 742 (1960). These cases and others are discussed by the Texarkana Court of Civil Appeals in the recent case of State v. Scarborough, 383 S.W.2d 839, wr. ref. n. r. e., wherein it was contended that the opinions offered by the landowners had no probative weight because the witnesses did not articulate the nature of the damage, the effect of the damage on the various parts of the residual acreage and the relationship of the damage to market value differences, if any, before and after the acquisition. We believe that State v. Scarborough follows the correct rule and supports appellees' position that the testimony of their expert witness and the other evidence in the case was sufficient to uphold the findings of the jury. See: State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936); Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151 (1950); Coastal Transmission Corp. v. Lennox, 331 S.W.2d 778 (Tex.Civ.App. 1960; Tennessee Gas Transmission Co. v. Adamsen, 262 S.W.2d 445 (Tex.Civ.App. 1953, n. w. h.)

We hold that there was some evidence of probative force raising the issue of damage to the remainder of appellees' tract and that such evidence is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. The trial court properly refused to disregard the findings on special issues 3 and 4.

Appellant's points one, two and three are overruled.

 By its point four, appellant contends that the trial court erred in refusing to allow Mr. Hale, appellant's value witness, to testify as to comparable sales. The trial court permitted Hale to testify that his opinion was, at least in part, based upon comparable sales, but refused to allow him to give the details of same. The trial judge was in error in such respect, but there is no showing in the record as to what the excluded evidence would have been and appellant has failed to demonstrate harm. An expert witness may testify as to sales of properties which he considers to be comparable as aiding him in reaching his opinion of the value of the tract in question, the sales prices of which he learned from other sources, where such testimony as to other sales is not offered as proof of the facts of such sales or sales prices, but for the limited purpose of showing a part of the basis for the value opinion of the witness. State v. Oakley, 163 Tex. 463, 356 S.W.2d 909, 95 A.L.R.2d 1207 (1962); State v. Scarborough, 383 S.W.2d 839 (Tex.Civ.App., 1965, wr. ref. n. r. e.). But here, since we have no record of the testimony sought to be offered by appellant, at most, harmless error is presented. South Texas Electric Cooperative, Inc. v. Beutnagel, 388 S.W.2d 447 (Tex.Civ.App., 1965, n. w. h.); Ex parte Taylor, 322 S.W.2d 309 (Tex.Civ.App., 1959, n. w. h.); Wheat v. Citizens National Bank at Brownwood, 310 S.W.2d 735 (Tex.Civ.

App., 1958, wr. ref. n. r. e.); Rule 434, Texas Rules of Civil Procedure. Appellant's point four is overruled.

The judgment of the trial court is affirmed.