Mrs. Elizabeth GANDY et al., Appellants,

v.

The STATE of Texas, Appellee.

No. 3378.

Court of Civil Appeals of Texas.

Waco.

Aug. 1, 1956.

Rehearing Denied Sept. 13, 1956.

W. A. Hawkins, Cline & Cline, Fort Worth, for appellants.

James & Mahanay, Cleburne, for appellee.

TIREY, Justice.

This is a condemnation case. The jury in its verdict found (1) that the reasonable market value of the .318 acre of land considered as severed, including all buildings and improvements, to be $5,900; (2) that the reasonable market value of the tract, exclusive of the .318 acre condemned, immediately before such condemnation, including the portion of the large building thereon but not including merchandise, machinery and portable storage facilities, was $12,500; (3) that excluding increase in value and decrease in value, by reason of benefits or injuries received by defendants in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract, a part of which has been condemned for Highway 81, and taking into consideration the uses to which the strip condemned is subjected, that the reasonable market value of the remaining tract, exclusive of .318 acre condemned, immediately after the taking, including the portion of the large building thereon but excluding merchandise, machinery, portable storage facilities, to be $12,500; (4) that the reasonable market value of the .318-acre strip, condemned for Highway 81, considered as severed land, but not including the small building and the portion of the large building on same to be $350; (5) that the reasonable market value

of the tract of land in question, exclusive of the .318 acre condemned, immediately before such condemnation, not including the portion of the large building thereon and not including merchandise, machinery and portable storage facilities, to be $500; (6) that excluding increase in value and decrease in value, by reason of benefits or injuries received by defendants in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract, a part of which has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, that the reasonable market value of the remaining tract of land, exclusive of the .318 acre condemned immediately after the taking of the .318 acre, not including the portion of the large building thereon and not including merchandise, machinery and portable storage facilities, to be $500; (7) that the reasonable market value of the leasehold interest of Jack Fincher in the .318 acre condemned, considered as severed land, not including the value of the improvements, to be $1,100; (8) that the reasonable value of the leasehold interest of Jack Fincher in such tract, exclusive of the .318 acre condemned, immediately before such condemnation, not including the portion of the large building thereon, and not including merchandise, machinery, and the portable storage facilities, to be $300; (9) that excluding increase in value and decrease in value, by reason of benefits or injuries received by defendants in common with the community generally and not peculiar to them and connected with their ownership, use, and enjoyment of the particular tract of land, a part of which has been condemned for Highway 81, and taking into consideration the uses to which the strip condemned is to be subjected, that the reasonable market value of the leasehold interest of Jack Fincher in such tract, exclusive of the .318 acre condemned, immediately after the condemnation of the .318 acre, not including the portion of the large building thereon, and not including merchandise, machinery, and portable storage facilities, to be $300;

(10, 11 and 12) that J. R. Milliron told Jack Fincher, at or before the signing of the lease in question, that he, Jack Fincher, might remove the improvements from the property at the termination of the lease, if the rent should be paid up 'at the time, and that Fincher relied upon such representation at the time it was made and believed the statement to be true, and that Mrs. Gandy, prior to the time the property was conveyed to her by Milliron, by the exercise of reasonable diligence, could have ascertained that Jack Fincher claimed the right to improvements from the land at the termination of his lease, if the rent should be paid up at that time; and (13) that Jack Fincher could not reasonably be expected to continue with the operation of his business on the property after the taking of the .318 acre of land and the improvements thereon.

The court entered judgment on the verdict of the jury and we find this recital therein:

"The Court hereby finds that the Plaintiff, State of Texas, acting through the Commissioners' Court of Johnson County, Texas, is entitled to condemn the property hereinafter described for highway right of way purposes, and that the defendants are entitled to be compensated for such condemnation, taking and use in the amount of $5900.00; of which the Defendants, Jack Fincher and wife, Clara Bell Fincher, are entitled to the sum of $5550.00 for the taking of their interest in the said property, and the Defendant Mrs. Elizabeth Gandy is entitled to the sum of $350.00 for the taking and use of her interest in the said property subject to a lien in favor of the Defendant J. R. Milliron on the said $350.00 awarded to Mrs. Elizabeth Gandy. The lien of the said J. R. Milliron is hereby decreed to extend not only to the fund awarded to the said Mrs. Gandy but also to extend to the remaining land on which the said lien

has heretofore existed, but not to the improvements thereon,"

and decreed accordingly.

We also find the following recital in the judgment:

"It appearing to the court that the award of the condemnation commissioners heretofore granted to the Defendants, and all of them, was the total sum of $17,845.00, and that the total judgment of the court herein is the sum of $5900.00, and that said judgment is less in amount than the said award of the said special commissioners,

"It is therefore ordered, adjudged and decreed that the defendants pay all costs in this behalf expended, which said costs are hereby adjudged against defendants in proportion to the amounts awarded them, and each of them, for which execution may issue."

Appellants Fincher and wife assail the judgment on what they designate as five points. Points 1, 2 and 3 complain of the failure of the court to submit their requested issue as to damages for loss of profits in the business because of the taking of a part of the building and property, appellants claiming it was shown that they would be damaged at least $1,500 per month in the loss of such profits because the business would be closed, because it was shown that they would have the loss of right of access and egress to the property, and that their right of possession would be impaired, and that they would lose much of their business because of the taking of the strip, and because it would impair their right of access and egress because it was shown that they owned the building on the property and that a part of the buildings were being taken and at least 40% of the transient business would be completely lost to them; (4) failure of the court to take into account the facts that the jury found in Special Issue No. 7 that the reasonable value of the leasehold interest of Jack Fincher in the land taken by condemnation was $1,100, and that since he

was a tenant and was in possession by virtue of a written lease on the premises, Fincher should recover such item as damages; (5) the court erred in entering judgment in favor of Jack Fincher and wife in the sum of $5,500 for the reason that notwithstanding the verdict of the jury, the overwhelming preponderance of the evidence was that the strip of land and the remaining improvements were damaged because of the taking of the strip of land for road purposes, and the jury finding that the remaining strip was not damaged did not attain the ends of justice and was overwhelmingly less than the amount awarded by the commissioners of more than $17,000. (J. R. Milliron did not appeal from the judgment entered.)

Appellee's counter points 1, 2 and 3 are to the effect that the special issue requested did not correctly state the rule applicable because it was not limited as to the time in which the highway would be constructed, the requested special issue being entirely unlimited as to time; (4 and 5) the court did not err in refusing to take into account the facts that the jury found in Special Issue No. 7, that the reasonable value of the leasehold interest of Jack Fincher in the land taken was $1,100, because such item is included in the jury's answer to Special Issue No. 1, to wit, the reasonable cash market value of the entire strip of land taken, including all improvements, which the jury found to be $5,900; and that the court did not err in entering judgment in favor of Fincher and wife in the sum of $5,500 because such finding was made by the jury and supported by the evidence.

Mrs. Gandy, the record owner, assails the judgment on two points. They are substantially: (1) The Court erred in refusing to set aside the verdict of the jury and to grant her a new trial because it appears from the overwhelming preponderance of the evidence that there would be damage to the remaining tract of land in question exclusive of the .318 acre condemned; and (2) in entering judgment in favor of Mrs. Gandy in the sum of $350, for the reason

that the overwhelming preponderance of the evidence was that after the severance the remainder would be depreciated, and the jury's finding that the remainder was not damaged was manifestly unreasonable, unjust and not supported by the evidence.

Appellee, in its reply to Mrs. Gandy's points, says substantially that there was no error in the court's refusal to set aside the verdict of the jury and refusing to grant Mrs. Gandy's motion for new trial because the verdict was supported by the evidence; and that the court did not err in entering judgment for $350 because same was in accordance with the jury's verdict and was supported by the evidence.

■ Going back to a discussion of appellant Fincher's points 1, 2 and 3, it is our view that they do not present reversible error for the reasons which we shall hereafter briefly enumerate. Appellant Fincher did not file any objections to the court's charge. Needless to say, if appellant sustained any loss in this behalf, he had the duty of pointing out the court's failure to submit such issue in his main charge and this he wholly failed to do. See Rule 274, Texas Rules of Civil Procedure. See also Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

■ In the second place, the issues that appellant prepared and submitted to the court did not present the true measure of damages for such loss, if any he sustained. We quote in full Issues 1 and 2 requested by Fincher:

"1. Do you find from a preponderance of the evidence that defendants Jack Fincher and his wife will suffer a loss of profits in their business because of the taking of the strip of land for highway purposes? Answer 'Yes' or 'No.'

"If you have answered the foregoing issue in the affirmative, please answer the following issue:

"2. What amount of money do you find from a preponderance of the evidence, if paid now in cash, would reasonably compensate defendants Jack Fincher and his wife, for such loss of profits?

"Answer in dollars and cents."

It is obvious that said issues are incorrect and do not present the proper measure of damages for loss of profits because they are not limited as to time. It is true that defendant pleaded he had a loss of profits. We quote in part the paragraph setting this out:

" * * * if said property is taken, he will lose his $20,000.00 investment in the buildings, $1000.00 for the gravel, $1000.00 for moving and storing his equipment, grain and products, $5400.-00 for loss of profits for the three months he is building and out of business, $15,000.00 for disruption of business, caused by moving to a new location and the loss of customers and business and for $5000.00 general damages."

■ It is true there was no exception to the damages pleaded and under the rule announced in Scott v. Gardner, Tex.Com.App., op. adopted, 137 Tex. 628, 156 S.W.2d 513, 141 A.L.R. 50, the petition will be liberally construed in pleader's favor. See also National Automobile & Cas. Ins. Co. v. Webb, Tex.Civ.App., 276 S.W.2d 403. However, we are of the further view that it is very doubtful whether the testimony tendered any issue in this behalf. Since the error was not pointed out by special exception to the court's charge, we think Points 1, 2 and 3 do not present reversible error. See City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176, 179; Hart Bros. v. Dallas County, Tex.Com.App., 279 S.W. 1111; City of LaGrange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243, 246; Parker County v. Jackson, 5 Tex.Civ.App. 36, 23 S.W. 924.

Moreover, in Issue No. 13 the jury expressly found that appellant Fincher could be expected to continue his business on the

property after the taking of the .318 acre of land. Finally, our Supreme Court in L-M-S., Inc., v. Blackwell, 149 Tex. 348, 233 S.W.2d 286, 290, made this statement of the rule:

> "In the case of Putnam v. Boston & P. R. Corp., 182 Mass. 351, 65 N.E. 790, 792, in discussing the measure of damages caused by the closing of a street upon which petitioners' business was located, for a period of four months, in such a way as to deprive petitioners of access to the general system of streets and avenues, it was said: 'If this access is only made less convenient, by the necessity of using some other part of the highway, instead of the part discontinued, their inconvenience in that particular is of the same kind as that of the public generally. But if their access from their property to the general system of public highways of the city or town is cut off altogether, the case is different. It has repeatedly been recognized that in such a case they may suffer special and peculiar damages.'"

We think that appellants' bill failed to tender an issue in this behalf.

■ With reference to appellants' fourth point, which was to the effect that the court erred in refusing to award judgment to Fincher for the sum of $1,100, which the jury found to be the value of the leasehold interest because he was the tenant in possession under written lease and should have been awarded said sum, it is our view that this $1,100 is included in the award the jury made to appellant Fincher wherein it found that he was damaged $5,500, and if said sum of $1,100 had been awarded to him in the judgment, it would have been a double recovery to that extent. Where property is under lease, as was the case here, it is obvious that the total damages awarded may not exceed the value of the fee as a whole. The jury fixed the value of the fee as a whole and we think the $1,100 found was concluded to be the value of the leasehold interest. See Fort Worth & D. S. P. R. Co.

v. Judd, Tex.Civ.App., 4 S.W.2d 1032, 1035. See also City of Waco v. Messer, Tex.Civ. App., 49 S.W.2d 822; 16 Tex.Jur. p. 980, par. 302; par. 360, pp. 1048, 1049; 69 A.L.R. 1263.

■ Now considering appellant Fincher's Point 5 and appellant Gandy's Points 1 and 2, we think that their contentions must be answered adversely to them because this cause was tried to a jury. As a reviewing court it is our duty to consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the party obtaining the verdict, and it is our duty in considering controverted issues of fact to accept as true that testimony which tends to support the verdict. 3–B Tex.Jur. pp. 370 and 372. Moreover, it was the jury's province to weigh all of the evidence to decide what credence should be given to the whole or any part of the testimony of each witness. The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable. See Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, point 6, at page 199. Finally, no rule is better settled than the one to the effect that if there is evidence of a probative nature to support the judgment of the trial court, that a court of civil appeals cannot substitute its findings of fact for those of the trial court. See Lynch v. McLendon, Tex.Civ.App., 283 S.W.2d 88 (no writ history) and cases there collated. We realize that this case presents a situation that is a little unusual in that the jury's award of damages was much less than the award made by the commissioners appointed by the County Judge, but it must be borne in mind that appellants were the ones who perfected their appeal to the District Court and tried the case before a jury. Needless to say, we cannot take this situation into account because the evidence as adduced is sufficient to support the findings made by the jury, and under the rules above cited, we are bound thereby.

Accordingly, the judgment of the trial court is affirmed.