JEFFERSON COUNTY, Appellant,

v.

Fred W. COHRT et al., Appellees.

No. 7381.

Court of Civil Appeals of Texas,
Beaumont.

Nov. 22, 1972.

Rehearing Denied Dec. 14, 1972.

W. G. Walley, Jr., Beaumont, for appellant.

W. Everett Sanderson, Nederland, for appellees.

DIES, Chief Justice.

The parties in this opinion will be referred to as they were designated in the trial court. Jefferson County, as plaintiff, condemned a "clear zone easement" over the property of Fred W. Cohrt, defendant. Plaintiff maintains an airport in Jefferson County and, pursuant to the Municipal Airports Act of Texas, established a clear zone approach area over part of said airport, including defendant's realty. It acquired "a perpetual easement within the said Clear Zone Approach Area over and above Defendant's said property and premises an air space unobstructed by any structure or tree, as defined by law."

There were but two issues submitted to the jury to which the jury answered (a) that the reasonable market value of defendant's land and improvements immediately prior to the taking was $15,000 and (b) that the same value immediately after such taking was $13,850.

The court entered judgment for $1150 for defendants against plaintiff, from which plaintiff perfects this appeal.

█ Plaintiff presents two points of error: (1) The verdict is without support of competent evidence. (2) The verdict is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust and unfair and the product of bias, prejudice and sympathy.

Defendants' only evidence of damage to the remainder of the land by the taking of this easement was given by defendant Cohrt, as follows:

"Q All right, Mr. Cohrt, are you familiar with the land values in that area?

"A Yes, sir, I would say I am.

"Q Do you know what the meaning of market value is?

"A Yes, sir.

"Q What is that?

"A It's whatever the party agrees to sell the property for and a buyer wants to buy it at, if they agree on a price, that makes the market value. In other words, if a seller agrees to sell it and a buyer agrees to buy it, well, I arrive at the market ·value of it.

"Q All right, now, in your opinion, what is the market value of your property before the taking of this clear zone easement?

"A It would be $15,000.00 is what I figured.

"Q All right, now, in your opinion, what is the market value of your land, of your property, after the county takes this clear zone easement?

"A I'd say between eleven and twelve thousand dollars.

"Q All right, now, how did you arrive at this figure?

"A Well, I wouldn't have the property rights that I had, the air rights would be like something missing on it."

We have come to the conclusion that this case is controlled by the rule announced by the court in Tennessee Gas & Transmission Co. v. Zirjacks, 244 S.W.2d 837 (Tex.Civ. App., San Antonio, 1951, dism.) and followed by this court in Natural Gas Pipeline Co. of America v. Mitchell, 440 S.W.2d 415, 419 (Tex.Civ.App., Beaumont, 1969, error ref. n. r. e.), as follows:

" 'One claiming damages to land must show the nature of the damage, the effect upon various portions of the tract and the relationship of the same to market value. A mere conclusion as to market value is insufficient for this purpose.' "

Pipeline easements are involved in both of these cases and it was held that merely giving values of the remainder both before and after were nothing more than conclusions, and the witness must show the nature of the damage and its relation to value. For a

few of the cases following the *Zirjacks* rule, see City of Irving v. Caster, 397 S.W. 2d 952, 954 (Tex.Civ.App., Dallas, 1965, no writ); County of Bexar v. Cooper, 351 S.W.2d 956, 958 (Tex.Civ.App., San Antonio, 1961, no writ); City of Cedar Hill v. Wheeler, 326 S.W.2d 236 (Tex.Civ.App., Dallas, 1959, error ref. n. r. e.), and Harrell v. F. H. Vahlsing, Inc., 248 S.W.2d 762 (Tex.Civ.App., San Antonio, 1952, error ref. n. r. e.).

Defendants place reliance primarily upon Gulf States Utilities Company v. Austin, 439 S.W.2d 411 (Tex.Civ.App., Houston 14th, 1969, error ref. n. r. e.). In that case, an 8.49 acre easement was taken for a transmission line easement. The utility company appealed contending no competent evidence to support jury findings of diminution in value to the remainder of the land. The trial court's judgment in that case was affirmed. We have good reason to believe the court followed the rule of the *Zirjacks* case although that case is not specifically mentioned. The landowner in the *Austin* case not only qualified as an expert witness by testifying that she was generally familiar with the property values in the area and that in her employment she worked daily with land values, but apparently she gave testimony showing the nature of the damages and its relationship to market value. The Houston Court of Civil Appeals in the *Austin* case made this statement:

"The reasons given by this witness in support of her testimony that the remainder would be diminished in value and the amount of such diminution as a result of the presence of the highline easement were rather specific." (439 S.W.2d at p. 412)

In addition to the landowner's testimony, an expert witness, duly qualified, gave testimony as to the value of the land before condemnation and then how the value would be impaired by the presence of the easement. The court then concluded: "We believe this to be sufficiently specific as to

how and why the property is damaged."
(439 S.W.2d at p. 414)

 In our case, there is no specific testimony showing in what way the easement involved would affect the value of the property. We approve of the general statement that when a witness gives evidence that he is acquainted with market value, he is prima facie qualified to testify concerning value as an expert and that his testimony then becomes a question of the weight to be given it. However, here, the market value of the easement was not submitted to the jury. The question involved is what, if any, monetary damage to the land did defendants suffer from the imposition of this air easement. We are not saying that Cohrt could not qualify to give this opinion. We are only saying that he did not, and before a jury could pass on its effect on the market value of the land, it would need this evidence.

Reversed and remanded.