TEXAS ELECTRIC SERVICE
COMPANY, Petitioner,

v.

V. D. WHEELER et al., Respondents.

No. B–6201.

Supreme Court of Texas.

May 11, 1977.

Rehearing Denied May 25, 1977.

Cantey, Hanger, Gooch, Munn & Collins, Jack C. Wessler and S. G. Johndroe, III, Fort Worth, Joseph A. Chandler, Stephenville, for petitioner.

McMillan & Lewellen, C. O. McMillan, Stephenville, Dixon & Petrovich, Jimmy C. Dixon, Granbury, for respondents.

PER CURIAM.

### ON MOTION FOR REHEARING

Texas Electric Service Company (TESCO) is currently constructing a nuclear-powered steam electric generating plant near Glen Rose, Texas. The project includes acquisition of rights-of-way for power lines to and from the plant. This case involves the acquisition of such a right-of-way across V. D. Wheeler's land, a 315 acre tract three miles from the plant. The right-of-way covers 17 acres, upon which eight electrical towers are to be placed. The jury has found that the 17 acres burdened by the right-of-way diminished in value from $1100 per acre before taking to $50 per acre after taking, and that the remainder of Mr. Wheeler's tract diminished $450 per acre by reason of the right-of-way. Judgment awarding damages for diminution of value has been entered on the verdict, and the court of civil appeals has affirmed in an unpublished opinion. The only issue as the case reaches this Court is whether there is any evidence which will support the jury's finding of diminished value of the remainder.

Vernon Thomas, a real estate broker and appraiser, testified as expert witness for Mr. Wheeler. Using a "comparative

approach," he determined that the land before taking was worth $1,000 per acre, the approximate average of five "comparable" sales. Regarding after-taking value, Mr. Thomas testified that power lines' presence converted the highest and best use of the acreage from residential subdivision to peanut farming, rendering a per acre value of $400 per acre. However, while his opinion of pre-taking value was supported by market data, Mr. Thomas admittedly knew of no "comparable" instance in which the presence of electrical towers had *in fact* caused a change in highest and best use or *in fact* had precipitated any decrease in market value of property in any amount. TESCO claims that, because he employed the "comparative approach" to value, it was mandatory for Mr. Thomas to have knowledge of actual, comparative market data to support his opinion of value. Without such market data, it is contended that the value opinion does not constitute evidence of probative force which will support a jury finding, being no more than an unfounded conclusion.

Wheeler responds that his expert, Mr. Thomas, was competent to testify as to change in highest and best use without basing his opinion upon actual market data; and it is asserted that as a land value expert Mr. Thomas was competent to attach his own monetary value factors to the presence of the right-of-way.

Both parties rely upon *Tennessee Gas & Transmission Co. v. Zirjacks,* 244 S.W.2d 837 (Tex.Civ.App.—San Antonio 1951, writ dism'd). *Zirjacks* was similar to the present case in that the court was concerned with evidence of damages to the remainder of a tract burdened by an easement. The court reversed an award of damages to the remainder because there was no showing that the easement affected all the remainder to the same degree, stating:

> One claiming damages to land must show the nature of the damage, the effect upon various portions of the tract and the relationship of the same to market value.

244 S.W.2d at 838. The court of civil appeals in the present case has held that the

*Zirjacks* rule applies to a party claiming damages but *not* to the testimony of expert value witnesses. Other courts of civil appeals have made the identical construction of *Zirjacks. Southwestern Bell Tel. Co. v. Ramsey,* 542 S.W.2d 466 (Tex.Civ.App.— Tyler 1976, writ ref'd n. r. e.); *Texas Electric Service Co. v. Yater,* 494 S.W.2d 271 (Tex.Civ.App.—El Paso 1973, writ ref'd n. r. e.); *Texas Power & Light Co. v. Trinity Valley Ranch Co.,* 395 S.W.2d 866 (Tex.Civ. App.—Dallas 1965, no writ); *Texas Electric Co. v. Etheredge,* 324 S.W.2d 322 (Tex.Civ. App.—Eastland 1959, no writ). In each of these cases, the issue was legal sufficiency of evidence to support awards of damages to remainders of tracts adjacent to easements, and in each case the expert did not testify as to any actual market data supportive of his diminution testimony.

On the other hand, two courts of civil appeals have reached an opposite conclusion on the meaning of *Zirjacks.* In *Natural Gas Pipeline Co. of America v. Mitchell,* 440 S.W.2d 415 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.), the court, after citing several cases interpreting *Zirjacks,* stated:

> We have concluded the underlined portions of the statement found in each of these opinions as follows:
>
> > "A mere conclusion as to market value is insufficient for such purpose. <u>But, this refers to the party claiming damage, not his value witness.</u>"
>
> is not the law in this State.

440 S.W.2d at 419. Accordingly, the *Mitchell* court applied *Zirjacks* to hold expert testimony legally insufficient to support a verdict of diminished value where such testimony amounted to a conclusion without foundation in actual market data. To the same effect is *City of Cedar Hill v. Wheeler,* 326 S.W.2d 236 (Tex.Civ.App.—Dallas 1959, writ ref'd n. r. e.).

■ We resolve the conflict in favor of the opinion of the court of civil appeals in the present case. Vernon Thomas, qualified as an expert witness, properly reached professional conclusions pertaining to the value of Mr. Wheeler's land. While lack of supportive market data would tend to di-

minish the reliability of expert testimony, such goes to the weight and not the propriety of evidence. That such is a proper rule of law becomes particularly apparent in a case such as the present one, where property has been taken by TESCO pursuant to a construction plan of a nature which has never before concerned Texas land. TESCO was free to challenge the testimony of Mr. Thomas by critical cross examination as it did in this case, and Thomas' competency was open to challenge. But the effect of the testimony elicited was for the jury to determine; we cannot say it negated all probative force of Mr. Thomas' value testimony elicited on direct examination.

The opinion of the court of civil appeals was ordered not published by that court. Due to the importance of legal issues raised, that court is directed to order publication of the opinion.

There being no error in the judgment of the court of civil appeals, the motion for rehearing of application for writ of error is overruled.