**GRAND PRAIRIE INDEPENDENT SCHOOL DISTRICT, et al., Appellants,**

**v.**

**MISSOURI PACIFIC RAILROAD COMPANY, Appellee.**

**No. 05–84–01109–CV.**

Court of Appeals of Texas, Dallas.

May 30, 1986.

Rehearing Denied July 9, 1986.

John Wright, Grand Prairie, for appellants.

John P. Legendre, Dallas, for appellee.

Before STEPHENS, WHITHAM and HOWELL, JJ.

HOWELL, Justice.

This is an ad valorem taxation case. Grand Prairie Independent School District appeals from the trial court's determination that Missouri Pacific Railroad Company's property had a lower value than that set by the Board of Equalization for tax years 1979–1981. Finding no error, we affirm.

At the trial, both the district and the railroad brought expert testimony to support their respective theories of valuation. The trial court chose an intermediate value.

The contentions of the parties and the trial court's determination are summarized as follows:

| | Railroad | District | Trial Court |
|---|---|---|---|
| 1979 | $500,578.00 | $2,137,456.00 | $1,603,092.00 |
| 1980 | 465,945.00 | 2,147,447.00 | 1,610,585.25 |
| 1981 | 472,693.00 | 2,147,447.00 | 1,617,333.25 |

During the tax years in question, appeal from a taxing authority's valuation of property was governed by Article 7345f (repealed) (Vernon 1970), repealed by Acts 1979, 66th Leg., p. 2329, ch. 841 § 6(a)(1), eff. Jan. 1, 1982. Section 4 called on the trier of fact to fix a value for disputed property if it found the board of equalization valuation to be "in error." *Banquette Independent School District v. Tenneco, Inc.*, 618 S.W.2d 824, 826 (Tex.Civ.App.— Houston [1st Dist.] 1981, writ ref'd n.r.e.).

In the case before us, the trial court heard expert testimony from both the district and the railroad. The district's appraiser testified that he derived his valuation principally through the market value or comparable sale approach. That approach consists chiefly of examining actual sales of other property, considered to be comparable, in the same area. Although the market value approach has great weight in the appraisal of the typical urban single dwelling, it is inherently difficult to apply in the valuation of railroad rights of way because they are rarely sold and, even when sold, are very difficult to compare to one another. The practice of determining the value of railroad right-of-way through comparable sale has been criticized by the courts. *Missouri-Kansas-Texas Railroad v. City of Dallas*, 623 S.W.2d 296, 298 (Tex.1981) (valuation based on comparable sales insufficient to support summary judgment); *Polk County v. Tenneco, Inc.*, 554 S.W.2d 918, 921 (Tex.1977) (market value of little use in valuing natural gas pipeline); *Missouri Pacific Railroad v. Midland Independent School District*, 647 S.W.2d 62, 64–65 (Tex.App.—El Paso 1983, writ ref'd

n.r.e.) (error to rely solely on market value).

The railroad's expert testified that he valued the property using the cost and the income approach. The cost approach seeks to determine the cost to replace the property and then subtracts accumulated depreciation. Theoretically, a willing buyer would pay no more than this amount.[1] The income approach estimates the future income of the property and applies a capitalization rate to determine value. The capitalization rate is the rate of interest required to induce investors to invest in the property.[2] *See Texas Eastern Transmission v. Sealy Independent School District*, 580 S.W.2d 596, 598 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). We note that the cost and income approaches have been approved by the supreme court. *M–K–T v. Dallas*, 623 S.W.2d at 299; *Polk County*, 554 S.W.2d at 921.

The trial court as trier of fact was free to deviate from the expert testimony in fixing the value of the property. *Texas Electric Service Co. v. Wheeler*, 551 S.W.2d 341, 343 (Tex.1977); *Tenneco, Inc. v. Polk County*, 560 S.W.2d 416, 417 (Tex. Civ.App.—Beaumont 1977, no writ). We cannot say that the trial court erred in selecting a figure *higher* than that indicated by two approved methods (cost and income advocated by the railroad) and *lower* than that indicated by a questionable one (market value advocated by the taxing authority).

The district asserts that the taxing authority's determination is entitled to the presumption that the board acted reasonably and in good faith. The district cites authority for the proposition that a valuation may be overturned only if it is grossly disproportionate. We merely note that the cited authority is not from the period when article 7345f was operative. That act, in effect, calls for a de novo valuation by the

---

1. A variation of the cost approach is the stock and debt method. This method assumes that corporate liabilities are equal to assets. Determining the total debt and market value of the stock outstanding theoretically gives the total market value of the assets. Rolling stock and non-railroad assets are then deducted. The resulting figure, being the calculated value of the

right of way, is apportioned along the length of the rail corridor.

2. Both cost and income approaches employ a unit method. The railroad is valued as a whole and then that ratio value is multiplied by the ratio that the property within the taxing authority bears to the total railroad property.

trial court where the board assessment is "in error." Inasmuch as the court reduced the district's valuation by approximately twenty-five percent, it is obvious that he found the valuation to be "in error."

The district finally urges error in the trial court's refusal to award judgment for unpaid 1979 and 1981 taxes. Three suits were filed by the railroad successively attacking the 1979, 1980 and 1981 assessments. Only in the 1980 case did the authority counterclaim for unpaid taxes. The three cases were ultimately consolidated for trial, but no pleadings were ever filed by the authority seeking unpaid taxes for 1979 and 1981.

The authority urges that the issues were tried by consent. We find no abuse of discretion in denying relief not pleaded. The primary purpose of pleadings is notice to the opponent of what the pleader expects to prove. The doctrine of trial by consent "should be applied with care and in no event in a doubtful situation." *Realtex Corp. v. Tyler*, 627 S.W.2d 441, 444 (Tex. App.—Houston [1st Dist.] 1981, no writ). Our record does not show such a clear understanding between the parties that the authority's right to a judgment was being litigated as to show error on the part of the trial court in refusing to include unpleaded relief in its judgment.

Affirmed.